UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| CHARLES RAY JOHNSON,<br><br>    Plaintiff,<br><br>vs.<br><br>SAM ON DEMAND,<br><br>    Defendant. | 4:25-CV-04124-ECS<br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS, DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL, AND 1915 SCREENING FOR DISMISSAL |

Plaintiff Charles Ray Johnson filed a pro se lawsuit alleging discrimination and retaliation. Doc. 1. Johnson also filed a motion for leave to proceed in forma pauperis and a motion to appoint counsel. Docs. 3, 4.

I. **Motion for Leave to Proceed In Forma Pauperis**

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." Lee v. McDonald's Corp., 231 F.3d 456, 459 (8th Cir. 2000). But in forma pauperis status is a privilege, not a right. Williams v. McKenzie, 834 F.2d 152, 154 (8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. Cross v. Gen. Motors Corp., 721 F.2d 1152, 1157 (8th Cir. 1983). After review of Johnson's financial affidavit, this Court finds that he has insufficient funds to pay the filing fee. Thus, Johnson's motion for leave to proceed in forma pauperis, Doc. 3, is granted.

## II.     1915 Screening

### A.     Factual Background as Alleged in Johnson's Complaint

Johnson filed a complaint alleging retaliation and discrimination based on race and disability.[1] Doc. 1 at 1, 5. In a document he labeled as "Attachment to Complaint[,]" Johnson describes his complaint in more detail, providing the Court with a more in depth description of his claims and factual allegations. Doc. 9. This Court liberally construes this attachment as an attempt to create an amended complaint and will consider it as such.[2]

On July 7, 2025, Johnson scheduled a ride with Sioux Area Metro SAM on Demand (SAM), a public transit provider in Sioux Falls, South Dakota. Doc. 1-1 at 1, 4; Doc. 7 at 1. Johnson arranged for SAM to pick him up at the McDonald's on 10th Street and transport him to a medical appointment at Sanford Health. Doc. 9 at 2–3. When the estimated pick-up time changed and Johnson became concerned that he would be late to his appointment, Johnson was able to secure alternative transportation from McDonald's to Sanford Health. Id. at 3. Before Johnson left McDonald's, he observed that a SAM vehicle "arrived and parked on a nearby side street but did not approach or pick up [Johnson]." Id. Johnson states that SAM "later issued a 'no-show' notice and charged [Johnson] $1.50, despite not providing the ride." Id.; see also Doc. 1-1 at 4.

---

[1] Johnson clarified in his civil cover sheet that his claims relate to racial and disability discrimination. Doc. 1 at 5. The civil cover sheet expressly states that the "information contained herein neither replace[s] nor supplement[s] the filing and service of pleadings[.]" Id. See also Favors v. Coughlin, 877 F.2d 219, 220 (2d Cir. 1989) (per curiam) ("The civil cover sheet, of course, is merely an administrative aid to the court clerk, and is therefore not typically considered part of a litigant's pleading papers."); Fed. R. Civ. P. 7 (defining pleading to include the complaint but not the civil cover sheet). This Court included reference to the civil cover sheet for the sake of completeness.

[2] An amended pleading "supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified." 6 Wright & Miller, Federal Practice and Procedure § 1476 (3d ed. 2025). Going forward, however, if Johnson wishes to submit an amended complaint, he will have to comply with the Federal Rules of Civil Procedure and this Court's Civil Local Rules of Practice.

2

After his appointment at Sanford Health, Johnson "requested a return ride from Sanford back to McDonald's[,]" but Johnson states that SAM "refused service, citing a six-mile radius policy and stating that [Johnson's] location was outside of that limit." Doc. 9 at 3. When speaking with a representative from SAM on the phone to request this ride, the representative informed Johnson that SAM's policy was not to pick patrons up outside of a six-mile radius but that SAM will make an exception and extend the radius by one mile "if the rider requesting had a strenuous situation." Doc. 7 at 1. Johnson allegedly "explain[ed] his disability, financial hardship, and lack of transportation[,]" but the SAM staff "still denied the ride" despite their emergency exception policy. Doc. 9 at 3. Because Johnson was able to secure a ride from the 10th Street McDonald's to his Sanford Health appointment but was denied a ride from Sanford Health to McDonald's because it was outside of SAM's six-mile radius, Johnson claims that the denial of a ride "appeared arbitrary and selectively enforced[.]" Id.

Because Johnson was unable to secure a return ride from Sanford Health to McDonald's, Johnson claims he "was forced to walk long distances—from Sanford at 85th and Cliff Avenue to Circle K, and then to Lewis Drug on 69th and Louise Avenue—despite the August heat and [Johnson's] disability." Id. As a result, Johnson alleges a violation of 42 U.S.C. § 1981, stating that "Defendant's refusal to provide contracted transportation services, while still charging Plaintiff, constitutes unlawful discrimination in the making and enforcement of contracts." Id. Johnson claims that he "has suffered financial loss, emotional distress, humiliation, and physical hardship as a direct result" of Defendant's conduct. Id. In his prayer for relief, Johnson requests $1,000,000 in compensatory damages for emotional distress and hardship, $1,500,000 in punitive damages "to deter discriminatory practices[,]" and $500,000 in special damages. Id. at 4. Additionally, Johnson requests that the Court "[i]ssue injunctive relief to stop further

discriminatory enforcement of Defendant's policies; [p]ermit class certification if amended to include additional plaintiffs; [a]ward reasonable attorneys' fees and costs[;] . . . [and] [g]rant such other and further relief as the Court deems just and proper." Id.

### B.     Legal Standard

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under § 1915(a), the court must then determine whether the complaint should be dismissed under § 1915(e)(2)(B). Martin-Trigona v. Stewart, 691 F.2d 856, 857 (8th Cir. 1982) (per curiam); see also Key v. Does, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016).  The court must dismiss claims if they "(i) [are] frivolous or malicious; (ii) fail[] to state a claim on which relief may be granted; or (iii) seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995).  Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted).  Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).  Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A district court has the duty to examine a pro se complaint "to determine if the allegations provide for relief on any possible theory." Williams v. Willits, 853 F.2d 586, 588

(8th Cir. 1988) (citing Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974)). A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985) (citation omitted). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553–63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Twombly, 550 U.S. at 556).

### C.   Legal Analysis

#### 1.   Asserting Rights of Others

In his amended complaint, Johnson states that he "reserves the right to amend this complaint to seek class certification and add Jane and John Doe plaintiffs similarly harmed by Defendant's policies." Doc. 9 at 3 (emphasis omitted). Although he is not seeking class certification or attempting to add additional plaintiffs at this time, this Court notes that "[p]ro se litigants may not represent the interests of other parties." Litschewski v. Dooley, 4:11-CV-04105-RAL, 2012 WL 3023249, at *1 n.1 (D.S.D. July 24, 2012), aff'd, 502 F. App'x 630 (8th

Cir. 2013) (per curiam); see also Fymbo v. State Farm Fire & Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others."). As such, "a *pro se* litigant generally cannot maintain a class action." Human v. Fisher Inv., Inc., No. 4:24-CV-01177-MTS, 2025 WL 2106979, at *1 (E.D. Mo. July 28, 2025) (collecting cases). Therefore, as a pro se plaintiff, Johnson may not assert claims on behalf of others, and to the extent that he attempts to do so, these claims are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2. Americans with Disabilities Act Claims

Although Johnson does not expressly cite to the Americans with Disabilities Act (ADA), this Court liberally construes his claim for disability discrimination as arising under the ADA. See generally Docs. 1, 7, 9. "Title II of the ADA prohibits 'public entities' from excluding 'qualified' disabled persons from programs, activities, or services, or otherwise discriminating against disabled persons." Maday v. Dooley, 4:17-CV-04168-KES, 2018 WL 4334071, at *3 (D.S.D. May 30, 2018), report and recommendation adopted, 2018 WL 4047116 (D.S.D. Aug. 24, 2018). A "public entity" includes "any State or local government" as well as "any department, agency, special purpose district, or other instrumentality of a State or States or local government[.]" 42 U.S.C. § 12131(1). Title III of the ADA provides for suits against private entities discriminating against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). A discrimination claim under both Title II and Title III of the ADA requires that the plaintiff establish he or she is disabled within the meaning of the ADA. Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999) (prima facie case

for Title II claims); Hillesheim v. Myron's Cards & Gifts, Inc., 897 F.3d 953, 956 (8th Cir. 2018) (citation omitted) (prima facie case for Title III claims).

A "qualified individual with a disability" refers to

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). A "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).

Here, Johnson generally states that he is disabled, but he does not provide any facts about his alleged disability for the Court to determine if he is disabled under the ADA. See generally Docs. 1, 7, 9. He claims that he suffers from short-term memory loss, Doc. 9 at 2, but it is not clear if this condition is what he meant as his disability. Further, he does not allege any facts indicating the severity of the short-term memory loss nor has he alleged any facts indicating that such condition limits any major life activities. Johnson also claims that he receives Supplemental Security Income and Social Security Disability Insurance, id., but "Social Security determinations, however, are not synonymous with a determination of whether a plaintiff is a 'qualified person' for the purposes of the ADA. At best, the Social Security determination was evidence for the trial court to consider in making its own independent determination." Robinson v. Neodata Servs., Inc., 94 F.3d 499, 502 n.2 (8th Cir. 1996) (internal citations omitted). Thus, Johnson's statements are insufficient for this Court to determine that he is disabled under the ADA.

The ADA also prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation under the ADA, a plaintiff must demonstrate "(1) that he engaged in a statutorily protected activity, (2) that an adverse action was taken against him, and (3) a causal connection between the adverse action and the protected activity." Mershon v. St. Louis Univ., 442 F.3d 1069, 1074 (8th Cir. 2006) (quoting Amir v. St. Louis Univ., 184 F.3d 1017, 1025 (8th Cir. 1999)). But Johnson has not alleged any facts indicating he engaged in a statutorily protected activity or that adverse action was taken because he engaged in a protected activity. See generally Docs. 1, 7, 9. Thus, Johnson has failed to state a retaliation claim under the ADA. To the extent he intended to state a claim under the ADA, that claim is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3. 42 U.S.C. § 1981 Claims

In the amended complaint, Johnson clarifies that his claims arise under 42 U.S.C. § 1981. Doc. 9 at 2–3. Section 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 474–75 (2006) (alteration in original) (quoting 42 U.S.C. § 1981(a)). Section 1981 defines "make and enforce contracts" to "includ[e] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). To bring a claim under § 1981, a plaintiff must "initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights." Domino's, 546 U.S. at 476. Johnson generally describes a contractual relationship for transportation services with SAM. Doc. 9 at 3. And

liberally construing Johnson's complaint, he alleges claims under § 1981 for discrimination and retaliation. Doc. 1 at 1.

To prevail on a racial discrimination claim under § 1981, Johnson must show: "(1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant." Combs v. Cordish Co., Inc., 862 F.3d 671, 681 (8th Cir. 2017) (citation omitted). Johnson alleges that "[h]e is an African American male with a disability." Doc. 9 at 2. But he fails to allege enough facts supporting the existence of discriminatory intent on the part of Defendant. Johnson makes a conclusory statement that he "was treated less favorably than others similarly situated, based on race and/or disability. Defendant's conduct was intentional, malicious, and in reckless disregard for Plaintiff's federally protected rights." Id. at 3. These conclusory statements are insufficient to show that Defendant had discriminatory intent when "refus[ing] to provide contracted transportation services, while still charging" Johnson. Id. Johnson claims the action was racially motivated, but it is unclear based on the facts alleged whether Defendant was even aware of Johnson's race. Thus, he has failed to state a § 1981 racial discrimination claim.

"To state a § 1981 non-employment retaliation claim, a plaintiff must allege facts establishing: '(1) he engaged in activity protected by § 1981; (2) he was subjected to an adverse action; and (3) a causal link exists between the protected activity and the adverse action.'" Albert v. GEICO Gen. Ins. Co., No. 18-CV-113, 2019 WL 1058251, at *5 (D. Minn. Mar. 5, 2019) (quoting Fitzgerald v. L&L Truck Brokers, Inc., 32 F. Supp. 2d 1080, 1085 (E.D. Ark. 1999)). Although Johnson stated that he has a claim for retaliation, there are no facts in any of his filings that show he was subject to retaliation based on his engaging in an activity protected by § 1981. Doc. 1 at 1. Thus, Johnson has failed to state a § 1981 retaliation claim.

Further, although § 1981 applies to private and government actors, Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 387–88 (1982) (citing Jones v. Alfred H. Mayer Co., 392 U.S. 409, 436 (1968)), claims against state and municipal actors must be brought under § 1983. Jones v. McNeese, 675 F.3d 1158, 1160 n.1 (8th Cir. 2012); see also Dickerson v. District of Columbia, 315 F. Supp. 3d 446, 451 (D.D.C. July 26, 2018) (stating that § 1981 does not provide for a private right of action against a municipality, and "[i]nstead, a plaintiff must pursue any such remedy against a municipality under Section 1983."). But under § 1983, departments or subdivisions of a city government "are not juridical entities suable as such." Ketchum v. City of West Memphis, 974 F.2d 81, 82 (8th Cir. 1992). SAM—a division of the City of Sioux Falls's public transit system that provides a public shared ride service for destinations that the Sioux Area Metro Bus does not reach—appears to be a subdivision of the City of Sioux Falls. See City of Sioux Falls, 2025 Budget 68, https://www.siouxfalls.gov/files/assets/public/v/1/city-government/budget/2025/fin24_006-2025-budgetbook_approved.pdf (indicating that the City of Sioux Falls funds the city public transit system); City of Sioux Falls, Sioux Area Metro - Title VI and ADA Complaint Form, https://us.openforms.com/Form/fa034f99-3a0c-4ce1-bb65-ca329a6e4877 (last visited Dec. 30, 2025) (indicating that the City of Sioux Falls is responsible for investigating Title VI and Americans with Disabilities Act complaints against the Sioux Area Metro); City of Sioux Falls, Public Transit Advisory Board (PTAB), https://www.siouxfalls.gov/government/boards-commissions/public-transit-advisory-bd (last visited Dec. 30, 2025) (indicating that a city board oversees public transit transportation in Sioux Falls). Thus, Johnson has failed to state a § 1981 claim against SAM.

Although courts should freely give leave to amend when justice so requires, Fed. R. Civ. P. 15(a)(2), this Court finds that the interests of justice are not served by letting Johnson again

amend his complaint to now name the City of Sioux Falls as a party. In order for a city to be liable under § 1983, "a plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." Moyle v. Anderson, 571 F.3d 814, 817 (8th Cir. 2009) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–92 (1978)). "[A] Monell claim requires an underlying constitutional violation[.]" Mitchell v. Kirchmeier, 28 F.4th 888, 902 (8th Cir. 2022). Even if this Court permitted Johnson to amend his complaint to name the City of Sioux Falls as a defendant, he has failed to state facts sufficient to show a violation of § 1981 for unconstitutional discrimination or retaliation. See Dickerson, 315 F. Supp. 3d at 456 ("To allege a Section 1981 claim against a municipality, a plaintiff must allege that the violation of the right to make and enforce contracts protected was caused by a municipality's custom or policy."). Therefore, this Court dismisses Johnson's complaint without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) without granting leave to amend.

### III.   Motion to Appoint Counsel

Johnson also filed a motion to appoint counsel. Doc. 4. Because Johnson's claims are all dismissed, the motion to appoint counsel, Doc. 4, is denied as moot.

### IV.   Conclusion

It is therefore ORDERED:

1. That Johnson's motion for leave to proceed in forma pauperis, Doc. 3, is granted.
2. That Johnson's complaint, Doc. 1, and amended complaint, Doc. 9, are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

11

3. That Johnson's motion to appoint counsel, Doc. 4, is denied as moot.

DATED January 6, 2026.

BY THE COURT:

_____
ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE